UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
JAMES FERGUSON,                     )
                                    )
        Petitioner,                 )
                                    )      Criminal Action No.
        v.                          )      12-10241-FDS
                                    )
UNITED STATES OF AMERICA,           )
                                    )
        Respondent.                 )
_____)

# MEMORANDUM AND ORDER ON PETITION TO VACATE AND CORRECT A SENTENCE

**SAYLOR, J.**

This is a proceeding to vacate and correct a sentence pursuant to 28 U.S.C. § 2255. Petitioner James Ferguson pleaded guilty on May 23, 2013, to one count of armed bank robbery in violation of 18 U.S.C. § 2113. On September 19, 2013, the Court sentenced him to a term of imprisonment of 152 months followed by a term of supervised release of five years.

At his sentencing, the Court found that petitioner was a "career offender" within the meaning of § 4B1.1 of the United States Sentencing Guidelines (although he received a sentence below the low end of the guideline range). That conclusion was based on the fact that he had previously been convicted in Massachusetts for a variety of qualifying offenses, including multiple armed bank robberies. Petitioner was not, however, adjudged to be an "armed career criminal" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).[1]

---

[1] The ACCA imposes a minimum term of imprisonment of 15 years for persons convicted of unlawful possession of a firearm under 18 U.S.C. § 922(g) who have three prior federal or state convictions for violent felonies or serious drug offenses.

In 2016, after the sentencing, the Supreme Court issued its opinion in *Mathis v. United States*, 136 S. Ct. 2243 (2016). *Mathis* involved a challenge to the ACCA, not the career-offender provisions of the Sentencing Guidelines. The Supreme Court held that a prior conviction does not qualify as the generic form of a predicate violent felony offense under the ACCA if an element of the crime of conviction is broader than an element of the generic offense. 136 S. Ct. at 2257.

Ferguson has moved to vacate and correct his sentence. The basis of his petition is not entirely clear, but he appears to contend that the principles of *Mathis* (which, again, was an ACCA case) should apply to the career-offender provisions of the Sentencing Guidelines, and that therefore the Court should not have found that he qualified as a career offender. He also appears to contend that his counsel did not provide effective assistance of counsel for failing to raise that issue at his sentencing. For the reasons set forth below, the petition will be denied.

**I.    Background**

The following facts are taken largely from the September 19, 2013 sentencing hearing and the Presentence Investigation Report ("PSR"), unless otherwise noted. *See United States v. Connell*, 960 F.2d 191, 192-93 (1st Cir. 1992); *United States v. Garcia,* 954 F.2d 12, 14 (1st Cir. 1992).

James Ferguson has lived a life of crime and spent almost the entirety of his adult life in prison. In 1975, at ages 15 and 16, he committed several armed robberies and was eventually sentenced to a term of imprisonment of 12 years and one day. (PSR ¶¶ 44-49). In 1977, while in prison, at age 18, he committed assault and battery on a corrections officer and assault and battery with a dangerous weapon. (*Id.* at ¶ 50). In 1978, he again committed assault and battery on a corrections officer. (*Id.* at ¶ 51).

He was released on parole on February 24, 1981, when he was 21 years old. (*Id.* at ¶ 49). Three days after being released on parole, he committed another armed robbery, assault with intent to murder, kidnapping, and illegal firearm possession. (*Id.* at ¶ 52). He was sentenced to a term of imprisonment of 15 to 20 years, which was later reduced to 12 to 15 years. (*Id.*). He was released from custody on November 3, 1989. (*Id.*).

Over the next 14 months, he proceeded to commit a string of armed bank robberies with several co-conspirators. (*Id.* at ¶¶ 54-55). His *modus operandi* was to use cutting tools to enter the bank through the roof overnight, and ambush employees the following morning. (*Id.* at ¶ 55). He was eventually arrested on January 3, 1991. (*Id.* at ¶ 54).

Ferguson was prosecuted in state court with respect to one of the robberies, which was committed on October 18, 1990. (*Id.*). He was found guilty of armed assault with intent to commit robbery, armed robbery, and assault with a dangerous weapon. On February 27, 1992, the state court sentenced him to a term of imprisonment of 12 to 15 years. (*Id.*).

Ferguson was also prosecuted in federal court with respect to other robberies committed during his 14-month period of freedom. (*Id.* at ¶ 55). He eventually pleaded guilty on February 16, 1996, to nine counts of armed bank robbery, three counts of attempted armed bank robbery, conspiracy to commit armed bank robbery, and use of a firearm during a violent crime. (*Id.*). The same day, he pleaded guilty to other federal charges of conspiring to possess and transfer a sawed-off shotgun, conspiracy to distribute heroin, tax evasion, and money laundering. (*Id.* at ¶¶ 56-58). He was essentially sentenced to a term of imprisonment of fifteen years, to be served consecutively to the sentence he already received in state court. (*Id.* at ¶ 55).[2]

He was released from federal imprisonment in late April 2012. (Sen. Tr. at 11).

---

[2] It appears that petitioner (among other things) received both a ten-year and a five-year sentence, to be served consecutively to the state sentence and to each other. (PSR at ¶ 55).

However, within weeks, he robbed the Cambridge Trust Company on June 28, 2012, while wielding a pellet gun. (PSR at ¶¶ 9, 13; Sen. Tr. at 32). He stole $63,616 in cash, of which approximately $53,000 was recovered by law enforcement officers. (Sen. Tr. at 6). He was indicted for armed bank robbery in violation of 18 U.S.C. § 2113 on August 14, 2012, and pleaded guilty on May 23, 2013. (Docket Nos. 1, 55).

His sentencing hearing was held on September 19, 2013. (Docket No. 67). At the sentencing hearing, the Court noted that because of his extraordinary criminal record, before Ferguson robbed the Cambridge Trust Company, he had spent "36 or 37 of the previous 38 years in prison." (Sen. Tr. at 48). He had been released for less than two months when he "walked into a bank with a mask and a gun (or what appeared to be a gun) and robbed it." (*Id.*).

The Court, relying on the presentence investigation report and without objection by Ferguson, conducted the following guideline calculation: first, excluding the career-offender enhancement, the Court noted that the base offense level for robbery was 20. U.S.S.G. § 2B3.1. Because Ferguson used a firearm to rob a bank of more than $50,000, the offense level was adjusted to 27. (*Id.* at 7).

However, Ferguson qualified as a career offender, based on his prior convictions for crimes of violence and drug trafficking. U.S.S.G. § 4B1.1 (a)-(c). Because the statutory maximum penalty for robbery is 25 years, the offense level was increased to 34. U.S.S.G. § 4B1.1(b). Applying the three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 yielded an offense level of 31. (Sen. Tr. at 7).

Ferguson's criminal-history score of 11 would normally result in a criminal-history category of V. However, because of the career-offender provisions, his criminal-history category was instead VI. (*Id.* at 8). Therefore, the guideline sentencing range was 188 to 235

months. (*Id.*).

Ferguson's counsel requested a sentence of 115 months, which would be at the high end of the sentencing range without the career-offender enhancement. (*Id.* at 30). The Court imposed a below-guideline sentence of 152 months, followed by a term of supervised release of 5 years. (*Id.* at 54).[3] Although Ferguson had a lengthy criminal history, the Court noted that he had displayed a "degree of self-awareness and contrition that is extraordinary." (*Id.* at 49). The Court also noted that there were "glimmers of light" in his personal life, including the presence of supportive family members and friends. (*Id.* at 50).

The present motion to vacate the sentence was filed with this Court on May 16, 2017. In the motion, Ferguson appears to contend that his 1992 state armed robbery conviction should not qualify as a "crime of violence" for sentencing purposes because the Massachusetts armed robbery statute "sweeps more broadly than the generic offense," violating the principles of *Mathis*. (Pet'r Mot. at 5).

## II. Analysis

### A. Whether the Petition Is Timely

In its opposition, the government first contends that petitioner's motion is untimely. Congress has established a one-year limitation period governing motions for relief under § 2255. 28 U.S.C. § 2255(f). The one-year period begins to run from the latest of one of four dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if

---

[3] The Court ordered restitution in the amount of $63,616, the amount stolen from the Cambridge Trust Company bank. (Sen. Tr. at 54). However, the amount recovered by law enforcement, approximately $53,000, was credited towards the restitution obligation. (*Id.* at 53).

5

> that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* Because petitioner never appealed to the First Circuit, his conviction became final on October 11, 2013, 14 days after the entry of judgment. Fed. R. App. P. 4(b)(1)(A)(i). However, the present motion was not filed until May 16, 2017. That was more than three years since the date his conviction became final.

Nevertheless, petitioner appears to invoke § 2255(f)(3) as justification for why he did not file an appeal. In his motion, he stated: "I did not raise the issue because it was barred by Circuit and Supreme Court precedent. My claim is based on the clarification of existing law by the Supreme Court made retroactive on collateral review, to wit: *Mathis v. United States*." (Pet'r Mot. at 6).

In *Mathis*, the Supreme Court held that a prior conviction does not qualify as the generic form of a predicate violent felony offense under the ACCA if an element of the crime of conviction is broader than an element of the generic offense. 136 S. Ct. at 2257. In making that holding, it compared the definition of burglary under Iowa state law with the "generic" definition under the ACCA. *Id.* at 2250. The Court concluded that because Iowa defined burglary as unlawful entry into "any building, structure, *[or] land, water, or air vehicle*" whereas the generic offense under the ACCA only required unlawful entry into a "building or other structure," the Iowa law set forth alternative means of fulfilling a necessary element of the crime of burglary. *Id.* (quoting Iowa Code § 702.12) (emphasis added). Therefore, the Iowa convictions could not count for the purpose of imposing a mandatory minimum sentence under the ACCA. *Id.* at 2257.

As noted, petitioner was not sentenced under the ACCA, and therefore *Mathis* is not

6

directly applicable. Instead, petitioner seems to contend that the principle set forth in *Mathis* should apply to the career-offender guidelines of the sentencing guidelines.

The government contends that *Mathis* "does not involve a 'newly created right.'" (Mem. in Opp. at 3). In support of this argument, the government contends that the reasoning behind *Mathis* rested on a line of cases reaching back to *Taylor v. United States*, 495 U.S. 575 (1990). Indeed, in *Mathis*, the Supreme Court stated, "[w]e have often held, and in no uncertain terms, that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense." 136 S. Ct. at 2251 (citing *Taylor*, 495 U.S. at 602).

Before *Mathis* there was a split among the circuit courts "over whether ACCA's general rule—that a defendant's crime of conviction can count as a predicate only if its elements match those of a generic offense—gives way when a statute happens to list various means by which a defendant can satisfy an element." *Id.* n.1 (citing 786 F.3d 1068 (8th Cir. 2015) (case below) (recognizing that exception); *United States v. Ozier*, 796 F.3d 597 (6th Cir. 2015) (same); *United States v. Trent*, 767 F.3d 1046 (10th Cir. 2014) (same); *Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014) (rejecting that exception); *Omargharib v. Holder*, 775 F.3d 192 (4th Cir. 2014) (same)).

The problem here is that even if *Mathis* created a newly recognized right, and even if that right is retroactively applicable to cases on collateral review, that right applies only to persons convicted under the ACCA. Petitioner here is not such a person. The Supreme Court has not recognized a *Mathis*-type right under the career-offender provisions of the Sentencing Guidelines. Accordingly, § 2255(f)(3) does not apply, and the petition is untimely.

For the sake of completeness, the Court will not rest on that ground alone, but will go on to address the additional flaws in the petition.

7

### B. Whether Ferguson Has Procedurally Defaulted

The government further contends that the petition should be denied because Ferguson has procedurally defaulted on his claim. Collateral relief in a § 2255 proceeding is unavailable if a petitioner has procedurally defaulted on his claim by failing to raise it at trial or on direct appeal. *Berthoff v. United States*, 308 F.3d 124, 127-28 (1st Cir. 2002) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). A petitioner can avoid that bar if he can show both "(1) 'cause' excusing his . . . procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982); *see also Murray v. Carrier*, 477 U.S. 478, 493-94 (1986). In an "extraordinary case," a petitioner who cannot show cause and prejudice for a procedural default may nevertheless be excused upon a showing that he is "actually innocent." *Murray*, 477 U.S. at 496. In this context, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

Ferguson did not argue at sentencing that his 1992 state conviction for armed robbery should not qualify as a crime of violence to warrant a sentencing enhancement under U.S.S.G. § 4B1.2(a). He has therefore procedurally defaulted as to that claim. However, he appears to contend that he has shown both cause and prejudice to excuse his default.

#### 1. Cause

To show cause, a petitioner must demonstrate that "some objective factor external to the defense" prevented him from raising a constitutional claim on direct appeal. *Murray*, 477 U.S. at 488. The Supreme Court has held that a finding of cause is warranted where the petitioner shows that, at the time of the direct appeal, "the factual or legal basis for a claim was not reasonably available to counsel." *Id.* (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984)). To show that there was no legal basis for the defaulted claim at the time of the direct appeal, it is not sufficient for a petitioner to show that the claim likely would have been futile based on then-existing precedent.

*See Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982). Rather, a petitioner seeking relief based on a change in the law must show that the "constitutional claim is so novel that its legal basis [was] not reasonably available to counsel." *Reed*, 468 U.S. at 16. A claim is sufficiently novel to warrant a finding of cause if it is based on a Supreme Court opinion that (1) "explicitly overrule[s]" Supreme Court precedent; (2) overturns "a longstanding and widespread practice to which [the Supreme Court] ha[d] not spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved;" or (3) "disapprove[s] a practice [the Supreme Court] arguably ha[d] sanctioned in prior cases." *Id.* at 17 (quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982)).

Petitioner does not indicate which prong of the *Reed* test applies. Nonetheless, and even assuming *Mathis* is controlling, it is clear that (1) *Mathis* did not explicitly overrule Supreme Court precedent (as noted, the court indicated that its decision was consistent with a line of cases going back to 1990); (2) *Mathis* did not overturn "a long-standing and widespread practice" to which the Supreme Court had not yet spoken, "but which a near-unanimous body of lower court authority" had expressly approved (as noted, there was split among the circuits); and (3) *Mathis* did not disapprove a practice the Supreme Court arguably had sanctioned in prior cases. Therefore, petitioner has failed to show cause to excuse his procedural default.

        **2.**    **Prejudice**

Even if petitioner could show cause, he must still demonstrate actual prejudice. *See Frady*, 456 U.S. at 167. To demonstrate actual prejudice, petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage." *Id.* at 170 (emphasis in original).

Here, the prejudice argument merges with the argument on the merits. If petitioner

9

shows that his state convictions for armed robbery would not qualify as a "crime of violence," his failure to raise that claim could have resulted in prejudice. The Court will therefore proceed to an analysis of the merits to determine whether the career criminal sentencing enhancement was warranted.

## C. Whether the Claim Fails on the Merits

Under the Sentencing Guidelines in effect at the time of petitioner's sentencing, a defendant is classified as a "career offender" if he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.[4] The guidelines in turn defined "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." U.S.S.G. § 4B1.2(a) (emphasis added). The italicized section is the "residual clause."[5]

In 2015 the Supreme Court invalidated a similarly phrased residual clause in the ACCA as unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551 (2015). However, two years later, in *Beckles*, the Supreme Court held that the Sentencing Guidelines "are not amenable to a vagueness challenge" because "they merely guide the district courts' discretion." *Beckles v. United States*, 137 S. Ct. 886, 894 (2017). Writing for the Court, Justice Thomas reasoned that, unlike the ACCA, "[t]he Guidelines . . . do not regulate the public by prohibiting any conduct or

---

[4] The guidelines at issue went into effect on November 1, 2012, and are available at https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2012/manual-pdf/2012_Guidelines_Manual_Full.pdf.

[5] The current iteration of the guidelines, effective November 1, 2016, includes robbery as an enumerated offense and has eliminated the residual clause.

10

by 'establishing minimum and maximum penalties for [any] crime." *Id.* at 895 (citing *Mistretta v. United States*, 488 U.S. 361, 396 (1989)). Therefore, the court upheld the constitutionality of § 4B1.2(a).

As noted, petitioner was not sentenced under the ACCA. He was classified as a career offender under § 4B1.2(a). The question is thus whether a Massachusetts conviction for armed robbery counts as a crime of violence under the career-offender provisions of the Sentencing Guidelines. *See United States v. Thompson*, 851 F.3d 129, 131 (1st Cir. 2017).

It appears that the First Circuit has never directly held that the Massachusetts crime of armed robbery counts as a "crime of violence" under § 4B1.2(a).[6] However, it has strongly suggested that armed robbery in general is a crime of violence. *See, e.g.*, *United States v. Sumrall*, 690 F.3d 42, 43 (1st Cir. 2012) ("The appellant has a prior felony conviction for armed robbery, which is admittedly a crime of violence."). *Cf. United States v. Ball*, 870 F.3d 1, 5 (1st Cir. 2017) (holding that conviction for Pennsylvania second-degree robbery, which more closely tracked the generic definition of robbery, constituted a "crime of violence").

Furthermore, the First Circuit has stated "that 'to qualify as a crime of violence under the residual clause [of U.S.S.G. § 4B1.2(a)], the offense at issue must also (i) pose a degree of risk that is similar to the degree of risk posed by the enumerated offenses—namely, arson, burglary, extortion, and offenses involving the use of explosives—and (ii) be similar in kind to those offenses.'" *United States v. Wurie*, 867 F.3d 28, 32 (1st Cir. 2017) (quoting *United States v.*

---

[6] As discussed earlier, before petitioner's 2013 conviction for armed bank robbery, he was convicted of armed robbery in state court in 1992. Massachusetts's definition of armed robbery, Mass. Gen. Laws ch. 265, § 17, appears to have different elements than the "generic" definition of robbery under the ACCA. *See United States v. Starks*, 861 F.3d 306, 322 (1st Cir. 2017) (finding that degree of force was immaterial for Massachusetts armed robbery, but force capable of causing physical pain or injury was required under the ACCA). Therefore, if petitioner was sentenced under the ACCA, his state armed robbery conviction could not count as a predicate violent felony. *See, e.g.*, *United States v. Lewis*, 2017 WL 3581667, at *1 (D. Mass. Aug. 17, 2017).

*Glover*, 558 F.3d 71, 80 (1st Cir. 2009)) (internal quotation marks omitted). Noting that courts are "governed by the Supreme Court's admonishment . . . that not 'every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury," the First Circuit cautioned that courts "are instructed to consider the 'ordinary case.'" *Id.* (quoting *Glover*, 558 F.3d at 82). The First Circuit held that the Massachusetts crime of assault and battery with a dangerous weapon constituted a "crime of violence," stating "[b]ecause a defendant must employ a 'dangerous weapon' to be convicted of ABDW, it is evident that the offense poses a serious potential risk of physical harm to another." *Id.* (quoting *Glover*, 558 F.3d at 81). Because armed robbery under Massachusetts law requires that the defendant be "armed with a dangerous weapon" and "assault another person," it is clear that armed robbery poses a similarly serious risk of physical harm to another. *Commonwealth v. Anderson*, 461 Mass. 616, 633 (2012) ("The elements of the crime of armed robbery are that a defendant, while armed with a dangerous weapon, assaulted another person, and took money or property from the person with the intent to steal it.").

In addition, another court in this district has noted that the Sentencing Commission, which promulgates the guidelines, has specified that robbery is a crime of violence. *Pryer v. Grondolsky*, 2017 WL 4540959, at *3 (D. Mass. Oct. 11, 2017) ("In 2006, an Application Note to the definition specified that robbery was a 'crime of violence.'") (quoting Application Note 1 to U.S.S.G. § 4B1.2(a) (2006)) (appeal filed). And, "[i]n 2016, the list [of crimes of violence] that previously was in Application Note 1—including robbery—appears in the text of the provision defining 'crime of violence.'" *Id.* (citing U.S.S.G. § 4B1.2(a)(2) (2016)).

Under the circumstances, the Court finds that Massachusetts crime of armed robbery constitutes a "crime of violence" for the purpose of imposing a career-offender enhancement in

sentencing. Accordingly, the calculated guideline range was correct.

### D. <u>Ineffective Assistance of Counsel</u>

Finally, petitioner appears to allege ineffective assistance of counsel because his attorney failed to object to the Court's use of the prior state armed robbery conviction in applying the career-offender enhancement. That claim is also without merit.

In order to establish a claim of ineffective assistance of counsel, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *United States v. De La Cruz*, 514 F.3d 121, 140 (1st Cir. 2008) (internal citations omitted). The Constitution does not guarantee to any defendant a perfect defense or a successful defense. *See Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012). Rather, "the performance standard is that of reasonably effective assistance under the circumstances then obtaining." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991) (citing *Strickland*, 466 U.S. at 687-88).

There are two elements to an ineffective assistance of counsel claim: (1) deficient performance by counsel and (2) resulting prejudice. *Peralta v. United States*, 597 F.3d 74, 79 (1st Cir. 2010) (citing *Strickland*, 466 U.S. at 687). An insufficient showing on either prong will defeat an ineffective assistance of counsel claim. *See e.g. Malone v. Clarke*, 536 F.3d 54, 64 (1st Cir. 2008). "There is no doubt that the cited two-part test also applies to representation outside of the trial setting, which would include sentencing and appeal." *Feliciano-Rivera v. United States*, 115 F. Supp. 3d 243, 249 (D.P.R. 2015) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985);

*Bonneau v. United States*, 961 F.2d 17, 20-22 (1st Cir. 1992)).

To show deficient performance, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. Counsel's performance is to be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). That evaluation must be highly deferential. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

To show resulting prejudice, a petitioner must show that, but for counsel's error, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is 'one sufficient to undermine confidence in the outcome.'" *Dugas v. Coplan*, 506 F.3d 1, 9 (1st Cir. 2007) (citations omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

There is no reason for a court deciding an ineffective assistance claim to address both components of the inquiry if the petitioner makes an insufficient showing on one. *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* In addition, "when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's [criminal proceedings], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

Putting aside the issue that petitioner has not made any arguments that his counsel's

performance was constitutionally deficient, petitioner cannot establish prejudice because, for the reasons stated above, his status as a career offender under the sentencing guidelines was correctly determined. An objection would have been overruled had it been raised. Accordingly, there is no reasonable probability that his sentence would have changed had counsel objected. *See Strickland*, 466 U.S. at 694-95.

### III. Conclusion

For the reasons stated above, petitioner's motion to vacate and correct his sentence is DENIED.

**So Ordered.**

Dated: January 16, 2018

/s/ F. Dennis Saylor IV  
F. Dennis Saylor IV  
United States District Judge